## PRIEST v. PINKHAM.

Liquors, bought for the purpose of being retailed, become, notwithstanding that purpose, the property of the purchaser; and if bought through the agency of a participator in the illegal intent, the effect is the same; and a delivery to such agent is a delivery to the principal, and he may maintain trespass for a violation of the possession.

TRESPASS. Some of the articles taken were spirituous liquors, purchased and kept for sale by one Pettengill, as

agent of the plaintiff, and were attached by the defendant, a deputy sheriff, as the property of Pettingill, neither he nor the plaintiff having a license to sell.

To the plaintiff's right to recover, the defendant objected that the liquors were purchased by Pettingill as the agent of the plaintiff, for the purpose of being sold in violation of law, and were held for that purpose at the time of the seizure; that the plaintiff had no possession except by virtue of the contract with Pettingill which had for its object a violation of the law; and could have no possession in law by force of such contract; and that the plaintiff could have no such property in liquors kept for sale without license, as would enable him to recover their value.

These objections having been overruled, a verdict was returned for the plaintiff, to be set aside, and judgment rendered for the defendant, or judgment entered upon the verdict, as the court, upon considering the objections, may direct.

*Perley*, for the defendant. The contract of agency between the plaintiff and Pettingill was for an illegal purpose. Its object was to violate the law, and the contract was therefore wholly inoperative for any purpose; it had not the effect of vesting in the plaintiff a property in the liquors. He had no such property but for the agency, and the agency was a contract tainted with an illegality which rendered it inoperative. *Roby* v. *West*, 4 N. H. Rep. 285; 7 Taunt. 246.

You cannot get along without the illegal contract. You must use it to establish the plaintiff's right, and the law will not permit this illicit transaction to stand as the support and basis of a right.

If an immoral book be published, the court will not protect the copy. 7 Ves. 1; 1 Jacob 471; 1 Merrivale 435.

An action will not lie against the hundred for the

destruction of an immoral book. The court will not protect the copy of a book, the sale of which would be illegal on account of its immoral character.

Here the sale of the spirits would be illegal. They were in possession of an agent for that illegal purpose. The plaintiff's possession is constructive, and depending upon the illegal contract.

*Minot,* for the plaintiff. The defendant's position would result in allowing any one to take possession of the property. The goods were the plaintiff's. They were paid for with his money, and bought by one charged with the duty of doing so. The property draws to it the possession.

The doctrine of *Roby* v. *West* does not apply to this case. The right of action here does not depend on the contract, but upon the property. There it depended on the contract.

The mere intention of the parties to make an illegal use of the goods, does not divest the property of the owner. The intention may be abandoned.

GILCHRIST, J. If the purpose for which the contract was made between the plaintiff and Pettingill had been carried into effect, the conduct of the agent would have been a violation of the law. At least, he would have aided another to violate the law. If an action had been brought to carry into effect a contract made by two to violate the law, it could not be maintained; for the law does not assume to enforce agreements to disturb society, and the true purpose for which laws are made are not promoted by causing such compacts to be kept.

But the law is neutral in such cases, and will not, in general, aid parties who have actually performed an unlawful contract to recover mutually what each has parted with.

Priest *v.* Pinkham.

If an agent makes a purchase for his principal, and takes a delivery of the chattel, it becomes, by the act, the property of the principal. The property is transferred from the vendor to the real purchaser, and the constructive possession attends the property. Such is the case when the transaction is lawful.

The defendant's position is, that the plaintiff had no possession but by virtue of the contract with Pettingill to hold it for him for an illegal purpose.

But conceding that the agency, having been contracted for the purpose of ultimately violating the law, was an illegal contract, and one which the parties had no right to make, and one which neither could enforce as against the other, it would be going much further to deny that it was an agency, and that, to the extent that it had been executed, was at least as good as other illegal contracts that the parties have carried into effect.

Now, by reason of the relation of principal and agent, the purchase of the liquors, made in form by the latter, vested the property and the attendant possession at once in the plaintiff. It is an error to suppose that in order to maintain an action for the thing sold to the plaintiff, he must first enforce the terms of an illegal contract. The contract has in fact been fully executed by the act of purchase in the agent's name. Upon the ground, therefore, that the plaintiff and Pettingill were violating the law in purchasing the spirits for the purpose indicated, the defendant's position seems insecure.

But purchasing liquors for the purpose of selling without license, is not an ineffective act, so far that the property may not pass by it. The intention with which the party buys the liquors, or with which he subsequently holds them, does not deprive him of his property in them, nor justify the wanton seizure of them by strangers.

A man may buy deadly weapons or poisons, for the purpose of assassination, but they are, nevertheless, his

property by the purchase; and it would be the same if he entrusted them to another for such a purpose.

Here, the sale of liquors without license is illegal. It is punishable as an offence, and the contract of sale is not enforced by law, because it is illegal. But the mere intent to devote the liquors to such use is not illegal.

If the purchase of liquors for such an object is illegal, so that no action can be maintained to enforce such a contract, it does not follow that, after the contract is executed by the payment of the price, and delivery of the article, no property in it vests in the purchaser. Otherwise, whose could the property be? Not the vendor's surely, who has parted with it.

Nor would it be the agent's or broker's who negotiated the purchase, and who did not consent to assume it; neither could it be the sheriff's who seized it for a like purpose of selling it without license; and a case would be presented for a pretty broad application of the maxim of "*potior conditio possidentis.*"

We think that one may lawfully purchase liquors with an intent to sell them without license. What he may do by himself, he may appoint another as his servant, agent or broker, to do.

The principle of *Roby* v. *West*, 4 N. H. Rep. 285, does not settle this case. The plaintiff claimed under a purchase which he had made. That purchase might have entitled him to what he claimed, but for its being part and parcel of a contract which he had made to sell lottery tickets, which was illegal. The decision proceeded upon the ground that the property in the tickets had not passed to the plaintiff before they were returned to the possession of the defendants, who were the original owners, and against whose right to retain them nothing existed but the unexecuted contract of sale under which the plaintiff claimed them.

We are therefore of the opinion that the plaintiff was

the owner of the goods, by virtue of a legal purchase, and constructively in possession of them when the seizure complained of was made. Consequently there must be

*Judgment on the verdict.*